The Honorable, the Judges of the United States Court of Appeals for the 4th Circuit, Oyez, Oyez, Oyez. All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the 4th Circuit, are admonished to give their attention for the court is now sitting. God save the United States and this Honorable Court. All right. Thank you. We're, I think we're all on. Judge Richardson and I are on video and Judge Motz is on with us by audio. But all three of us are on and we'll begin by hearing case of Vandross v. Stirling. And Mr. Gross, is that the correct pronunciation? Yes, sir. It is. Okay. Well, why don't you begin? Thank you, Your Honor, and may it please the court. The state of South Carolina tried Charles Vandross for murder three times before a jury convicted him. The prosecution relied heavily on forensic evidence and expert witness testimony. Mr. Vandross never had the benefit of a crime scene expert because his trial counsel operated under the mistaken belief that state funding was not available for expert witnesses because Mr. Vandross's family had retained him. The South Carolina State Court and subsequently the District Court unreasonably decided this issue. The state court order of dismissal found that trial counsel was effective in his representation of Mr. Vandross under prong one of Strickland. This state court finding that trial counsel was effective under prong one of Strickland was contrary to well-established, firmly established federal law decided by the Supreme Court going  The District Court report and recommendation repeated this same error, except the District Court did not even consider the prong one finding the District Court. They deleted that from its order altogether. However, the report and recommendation and the opinion on the report never addressed the specific impact of what trial counsel's error was. Also did not consider how this matter was presented to the South Carolina Supreme Court. In order to understand that, it's necessary to understand the unique procedural history of this case. When Mr. Vandross was in post-conviction, his court-appointed PCR lawyer ultimately had a conflict of interest with Mr. Vandross. Mr. Vandross raised that in a hearing before Judge Russo and specifically talked about how matters that should have been said during the PCR hearing were not raised at all. Judge Russo had a very lengthy colloquy with Mr. Vandross where they discussed whether Mr. Vandross should get new counsel at that point in time or whether or not they should wait for the PCR judge, Judge Newman, to issue an order in the case. Mr. Vandross, of course, wanted to have counsel changed at that point and have an opportunity to cure the matter. Judge Russo opted for the second option, which was to see if Judge Newman granted relief. If Judge Newman granted relief, then this issue was moved because Mr. Vandross would get a new trial. If Judge Newman did not grant relief, then Mr. Vandross was going to be entitled to his hearing on the conflict of interest and the determination as to whether or not he would get new counsel and be able to reopen the evidentiary hearing. Judge Newman, of course, issued an order denying relief. That order was likely drafted by the Attorney General's office and the hearing that Judge Russo promised never took place. There's probably several reasons why it never took place. The first reason is that appointed PCR counsel during the hearing in front of Judge Russo said that basically said he wasn't going to do anything else for Mr. Vandross after that hearing, and he didn't. He didn't even file the Rule 59e motion that's necessary in our state procedures before you Nobody, it appears, ever called to Judge Newman's attention that Mr. Vandross had been promised this hearing. So both PCR counsel and the Attorney General dropped the ball on that issue. And that's when Ms. Franklin Best and I got involved in the case, and we immediately realized the procedural deficiency that was the result of the hearing in front of Judge Russo. We immediately recognized that the conflict of interest was a major issue in this case. We immediately realized that Mr. Vandross was entitled to this hearing based on the ruling of the court, and he didn't get it. The first thing that we did in the South Carolina Supreme Court is that we asked the Supreme Court to remand the case to the circuit court so that Mr. Vandross could have that hearing as an alternative to just bypass the remand and recognize that the conflict of interest was substantial and required the appointment of counsel that would be able to have a new evidentiary hearing. So it's important to understand that the relief that we were asking for in our state's highest court was to reopen the PCR where Mr. Vandross would have an opportunity with conflict-free counsel to present the evidence on the prong two of Strickland, which of course is prejudice. It wasn't until we got to the district court where the magistrate court judge granted the motion for funding so that Mr. Vandross would be able to hire an expert witness, and of course you have the curriculum vitae and the affidavit of Roger Morrison, who is a well-respected crime scene expert, retired from the state of Alabama, consulting in private practice, and has been cited with approval by this court in prior opinions. And Mr. Morrison's affidavit, we believe, establishes prejudice. And you have to go back and look at the trial history of this case and realize, as I opened, that the state of South Carolina tried Charles Vandross three times before they were able to get a jury to convict him. The first two juries- Mr. Gross, you indicated that the affidavit of the expert established prejudice. And if I read the affidavit correctly, he listed a number of tests or investigations that should have been conducted, but there is no forecast about any one of those to suggest that it would have been fruitful. How do we handle that? Well, in addition, I think there's two ways that you can handle that, because in addition to suggesting other things that could have been done, he also suggested things that could have been done in cross-examination. The reason- Well, I understand, but I'm trying to get to the prejudice prong. And anybody can sit around and say, you could have done this, this, this, this. The question is, had it been done, would it have led to something fruitful? In other words, there was really no opinion that I thought- I didn't see any opinion as to anything that would have changed. Well, again, if you look at the Supreme Court decision in Kyles v. Whitley, they say that a conservative approach that a criminal defense lawyer can take is to challenge the reliability and the integrity of the investigation, and that could have been done with Mr. Morrison testifying. And this is a case where the jurors were already having a hard time believing in the direct evidence testimony from Joanne Super Wilson. The second way you could look at it, Your Honor, and it's probably more of a Martinez path, is, you know, the prong one of Strickland, the state Supreme Court is just objectively wrong. You could then look at the deficient process, the deficiency of PCR counsel, and you could remand this case to the district court where we could have a hearing. I believe we did ask for a hearing. Mr. Morrison could testify. There could be more discovery and an opportunity to develop the prejudice prong in more detail. We think that on the record that we have right now, this court could grant relief and remand to the state courts of South Carolina for jurors to make the determinations on this issue. But if you disagree with us, I think the second alternative is to remand it to the district court for a hearing on the prejudice prong. Mr. Gross, can I ask, I think, Judge Niemeyer's question in a slightly different way. You're obviously an experienced trial lawyer yourself. If you were standing in front of the jury for Mr. Vandross and you had Mr. Morrison's affidavit with you, tell me the two best things in the affidavit that you would use in front of a jury, right, that you would actually like say, I mean, I'm just trying to figure out, you know, if you've got that information, let's assume that information, exactly what what the affidavit says, tell me the two things that you would use from that in front of the jury. All right. Um, and Judge Richardson, I appreciate the question. But I think that if I was standing in front of a jury, I wouldn't just be standing there with Mr. Morrison's affidavit. I would be standing there being able to reference his testimony. And there's I understand that that's not the only thing you're going to reference. But I'm saying, in addition to all the other arguments that you would, you know, marshal in his favor, I want to know what's different about the Morrison affidavit. What does the Morrison affidavit add? Right. Do you understand what I'm trying to say? I want to say, what are you going to say about the Morrison affidavit? For example, you know, in 3D on page one of his affidavit, you know, Mr. Morrison has some expertise in DNA. And this goes to the failure of law enforcement to look for Mr. Vandross's DNA or fingerprints on the roll of duct tape. And this goes, this would directly undermine her credibility, which was necessary for her for the for the jury to get to a conviction. But during the trial, let me just stop you on that one. So your first example, that the fact that the government didn't test for DNA was raised at trial by defense counsel, wasn't it? Well, it was, but it wasn't, but it wasn't raised with the benefit of an expert testimony, a defense expert, which the case law recognizes that jurors are much more likely to be convinced by defense experts and just questioning of a lawyer. Okay, so what, what's the, what's the second, if that's the best thing, give me the second best thing that you would rely on from the Morrison affidavit in the closing argument in front of a jury? And I don't know that I'm necessarily going in the order of best, but I was just going in the order of best. I'm just asking for the two best. So maybe that's the second best argument. What's then the best argument? Well, you know, if you look at on page two of the affidavit, M and N regarding, you know, the testing, and obviously we would like to have had access to the gun where Mr. Morrison could do some testing to determine how loud the gun was to assess Ms. Wilson's credibility. And then we're, we're related to the gun. You have issues about in paragraph N about the GSR. And so I think that that would be very persuasive to the jury. And just following up on, on judge Richardson question, you've told the jury nothing. You just said it would be helpful if we tested it, but the jury doesn't hear. They say, so what? In other words, how does that change the evidence that the, on which the jury makes a decision? Well, I think that you, you have an expert who can be able to explain to the jury how that makes a difference. And you've got to realize that in the posture that we've come here is every court before us has found that trial counsel was effective under prong one. I mean, we've never, Mr. Vandross, I mean, the breakdown in the process where this case is going off the rails is Mr. Vandross has never had the opportunity through an expert to develop these matters in a hearing where prejudices is considered. And that's why, you know, I think that there's this Martinez vehicle under prong two, where you can remand it to a magistrate to have the testimony and consider the testimony determine whether or not there needs to be additional discovery and, and, and decide the issue. Counsel, this is Diana Mott. Just so I understand what you're saying. You don't think there was any obligation for you to put in an expert who would opine that this made a difference? Not that it could make a difference, that it would be a good idea. And there was a possibility, but that it did make a difference. Is that what you're saying? And I see my time is up. Can I go ahead and answer the question? Yeah. Well, I think that, you know, the affidavit that we have raises some serious issues about what an expert could have done. And we did have, have a request to be able to have an evidentiary hearing where this could be developed in more detail. And we were, we were denied on that. And so that's why I suggest that second vehicle as a path of relief. So the direct answer to my question is yes, that is what you're thinking, right? Well, I think yes, we have an obligation to present an expert and to develop what those expert opinions are. And in this case, we needed a hearing to do it. Right. And your expert has not done that yet. Well, and our expert had done this based on the review of the trial evidence with the He had not made, he had not issued an opinion saying these things would make a difference. Did he? I thought he was just saying they were a good idea. Well, I think these are, these are things that he's saying that could have been been raised in his could make a difference. I think it would make a difference. I think it would make a difference. I think it absolutely would have changed the result of what the experts said. Did the experts say it did make a difference or it could make a difference? I think that when you look at this affidavit, there's enough in there to conclude as a matter of law that it would have changed the outcome of Mr. Vandross's trial. Well, how can you say that when we have no opinion that changes any of the forensic evidence? In other words, there's no test that has been said that's wrong. There's no prediction as to what a test would produce. In other words, basically, it's just an idea list. Um, again, you know, I think it comes back to the value of having an expert come into court and say, you know, based on my training, education experience, this is how you conduct a crime scene investigation. This is the things that you do. They did not do this. This evidence would be directly related to whether Ms. Wilson was credible or not credible, and that changes the outcome. This jury already was not inclined to believe her. Certainly, the first two trials hung on her credibility. An expert would have tipped the balance in favor of acquittal in this case. All right. You've got some rebuttal. We'll hear back from you. Let's hear from Mr. Ross at this point. May it please the court. This issue has already been adjudicated on the merits in state court, and as such, not only is the decision entitled to deference under 2254D, but also the Martinez exception simply doesn't apply. We're not dealing with a situation where Mr. Vandro's procedurally defaulted a claim for failing to raise it in state court. To the contrary, this man had a full evidentiary hearing. The hearing lasted several hours. He was appointed counsel, and after that hearing, he moved to amend his pleadings to capture this particular issue. He raised the issue at the hearing, and he captured the issue in his amended pleadings. The PCR court subsequently ruled on the merits. The court held that counsel was effective and that there was no prejudice. At no point in time did the state of South Carolina deny Mr. Vandro's any opportunity to present evidence, deny him access to court authorized funding, or prohibit him from presenting his case in court. Mr. Vandro's now challenges the state court decision for not giving him a second bite at the apple. A year and a half after the PCR court made its ruling in this case, he sought that second bite. It was not unreasonable for the Supreme Court of South Carolina to deny him that opportunity. This is not a situation that this court faced in the Winston case. This is not a situation where the state court unreasonably truncated Mr. Vandro's ability to develop the facts. As you'll recall in Winston, the petitioner in that case was denied the opportunity to conduct discovery. He wanted to issue subpoenas in the case, and the Virginia state court denied him that opportunity. And this court held that its ensuing decision was not entitled to deference. That situation didn't occur here. Again, you've got a court appointed attorney. That attorney raised this issue as well as numerous other issues before the PCR court. This wasn't the only issue that Mr. Vandro's was trying to obtain relief on. And either a whole host of issues addressed in the PCR court's order. This is also not a situation where the new evidence that Mr. Vandro's has provided has fundamentally altered the substance of this claim. Again, in Winston, this... Mr. Ross, I'm curious. You addressed that issue. Do you understand Mr. Vandro's to make that argument? I sort of was looking for that argument, but I never saw Mr. Vandro's allege anywhere that the new information here fundamentally altered the claim that was presented in the state PCR court. Do you understand them to make that argument? That's a separate argument that we can address, and I was looking for it. But when I go back and look at the briefing here, I don't see that argument. Am I missing that argument? I understand this is not in your interest, but you're an officer of the court. Do you understand them to be making that argument? He hasn't made the argument, Your Honor. What he has made is the argument that Martinez applies. And that's one avenue that potentially this court could grant relief under Martinez. So that's why I felt it was necessary to raise it. I'm happy for you to address it. I just was curious about whether it was an argument that was actually raised. It was not contained in his brief. But it's an issue that if you're going to seek relief under Martinez, that's potentially one avenue the court could do. But that avenue is closed under this court's reasoning in the Winston case, in the Wise case, and also most recently in Moore v. Sterling from earlier this year. The test under Winston in whether or not new evidence fundamentally alters a claim is not whether that new evidence makes the claim stronger. The test is whether or not there is any evidence in the state court record that Mr. Vandross could use to prove an essential element of his claim. And if you look at his brief, he's relied exclusively upon evidence raised in the state court proceeding for the first prong under Strickland, the deficiency of counsel. He's relied upon trial counsel's testimony at the PCR hearing regarding whether or not the expert would be beneficial, whether Mr. Vandross had the opportunity or ability to pay. So everything he's hanging his hat on to establish the first prong was raised before the state court. Therefore, if you apply that test in Winston, this is not a different claim. The heart of this claim remains the same, that trial counsel failed to retain an expert either for affirmative testimony or simply for consultation. And that's what the PCR court ruled upon. So this new evidence doesn't change things. Because there is an adjudication on the merits, Martinez simply doesn't apply. By its terms, Martinez applies to situations of procedural default of a claim. And the Supreme Court defined that term in its opinion, procedural default, meaning a state court not adjudicating the claim on the merits because the petitioner did not abide by procedural rule. And if there were any doubt about the reach of the Martinez exception, this court removed all doubt earlier this year in the Moore v. Sterling case. This court explicitly held that Martinez is not an avenue to present additional evidence where the state court ruled on the merits, where the claim was not procedurally defaulted for failing to raise it in state court. So the effectiveness or ineffectiveness of PCR counsel simply doesn't matter. Can I ask, with apologies to Judge Motz for stealing her question, but sort of ask you the question that she asked your colleague. And that is, is it ever sufficient for a petitioner in a habeas case like this one to put on expert testimony that there's evidence that could have made a difference as opposed to, you So in other words, the possibility that there's a test that might turn up pertinent evidence, could that ever suffice to show prejudice? Well, it hadn't changed the nature of the evidence presented before the jury. So again, if an expert essentially reads a transcript and identifies perceived holes in the state's case, he still hasn't affirmatively changed the nature of the evidence. So the jury is going to hear the same evidence at trial and based on what was presented before the PCR court. So the answer to your question is no. Unless the expert offers some type of affirmative evidence, some type of new test or challenging the results of the state's experts. It's speculative to assume that prejudice would exist in that case, Your Honor. Excuse me. Hi, this is Diana Motz. I'm not sure I really understand your response. It seemed to be that you thought that you could make a proffer with an expert and that if the proffer came true, if the expert said what the proffer said, then it was up to the jury to decide whether that would change the case. What I really was getting at in my question, maybe Judge Richardson was too, is does the expert have to opine that in his expert view, this would change, this new whatever it is would change things or not? Your Honor, I think the key would be there has to be some type of change in the nature of the evidence. That could either be through the expert's testimony that the evidence the state presented was unreliable or it could be through new evidence, new testing that the expert had conducted. But there has to be some type of change in the nature of the evidence after that expert's opinion. I think I understand the change. What I'm asking you is, is it necessary that the expert that this change would make a difference in the experts that will agree that there is something that the expert has said is new, right? That's what you were getting at. Either a new test or something that he points to that should have been done otherwise or something. Does the expert also have to opine that that would have made a difference? Or is that not necessary? Ultimately, that's a decision for the court. It would certainly help the petitioner's case, but I don't think it's necessary. That's one thing the court could take into consideration in assessing prejudice, but determining whether or not there would be a fair probability that the result at trial would have changed, that's a decision for the court to make. I'm just trying to follow that through because it'd be a little odd for us. I mean, you know, Mr. Morrison here may be great at looking at crime scenes, but why would we think he's an expert on what juries do? Your Honor, you hit the nail on the head. Ultimately, it's for the court to decide, and the strength of that opinion would be one of the factors the court would use. I don't think Mr. Morrison's opinion, as Your Honor mentioned, he may have great experience on crime scene investigations, but he's certainly not an expert in sound suppression. He's certainly not an expert in any host of any other realms. And he might be an expert in, you know, being a jury consultant. We just don't know that about him. Yes, Your Honor, that's correct. I suppose that if the expert looked at the tests that were actually conducted and gave the opinion that the state's expert made a wrong reading of it, didn't apply scientific standards, and that when you do apply the scientific standards, the outcome is different, that would be new evidence, wouldn't it? Yes, Your Honor, it would. But again, that was not done here. So we have an adjudication on the merits. Martinez, by its terms, does not apply. The issue presented before this court, then, is whether or not the state court's adjudication of this claim is reasonable under 2254D. And again, there are two prongs, as the court is aware, of Strickland, deficient performance and prejudice. We've talked about prejudice at length, but the state court could have also denied this performance as well. Not every case requires an expert for it to be tried effectively. Strickland recognizes that there is a wide latitude of strategy for counsel to pursue. Very rarely, as the court recognized in Hinton, as the court recognized in the Richter case, very rarely are you going to have a situation where the only reasonable strategy is to retain an expert. The extent and the limitation... I think if I understand the petitioner's argument, however, is that the reason given by defendant's counsel for not getting an expert was the funding, which was an erroneous assumption. And that that was the deficiency in it, with the assumption that had there been funding, he would have gotten help, forensic help. It seems to me to focus on the deficient performance is a much more difficult task than to focus on the prejudice. It's a more difficult task, but the issue here is not whether the PCR court was correct in its ruling. The issue was whether or not it was unreasonable in its ruling. And in Mr. Vandross's argument, he's assumed a host of facts that simply weren't presented before the PCR court. He has assumed that trial counsel believed experts were necessary in this case. PCR counsel never or trial counsel never testified to that at the PCR hearing. He testified that an expert may be beneficial. A lot of things can be beneficial. Strickland does not codify things that are beneficial. Strickland does not set a floor of the best practices. Floor under Strickland is professional incompetence under prevailing norms. Different defense attorneys can try cases different ways. No two defense attorneys, even the best ones, aren't going to try a case the same way. So in this particular case, trial counsel said it may be beneficial to have the sound expert. He never testified that it was necessary. So the PCR court could have held reasonably that this was a situation where trial counsel could have effectively represented his client through cross-examination alone. And that's what trial counsel did in this case. These perceived holes in the state's forensic evidence, he raised all of them to the jury. To the jury, he had the CSI forensic technician concede that there was no physical evidence putting his client in the home. He had the gunshot residue expert concede that there was the potential that the lead particles found on his client were incidentally transferred. He had the DNA expert concede that his client's DNA was not found on the duct tape. So all these holes, alleged holes in the state's evidence, trial counsel raised before the jury. Getting to prejudice, again, this is a situation where Mr. Morrison's affidavit. To this day, he has not identified how the result at trial would have changed. He's not articulated any change in the nature of the evidence that would have been presented to the jury. He simply read the transcript and identified potential holes in the state's case. There's been no affirmative testing on any piece of evidence. He's not challenged any expert's qualifications. He's not challenged any expert's opinion. He simply identified perceived limitations in the state's case, in the same way an appellate attorney would identify limitations in the state's case. Federal habeas is designed to ensure and correct extreme malfunctions in the state criminal justice system. This is not that case. And if there are no further questions from the court, I'll cede the rest of my time to the court. All right. Thank you, Mr. Ross. Mr. Gross? Thank you, Your Honor. May it please the court. Picking up where Mr. Ross left off with the testimony of trial counsel, the question at the PCR hearing was, did you hire or retain any experts in this case? The answer was, I did not. Told him that I thought it would be very beneficial to us, but I was retained and he did not have funds to do that. And then he continued to explain why Mr. Ross couldn't hire an expert because he couldn't even finish paying trial counsel. And based on that testimony at page 1167 and 1168 of the joint appendix, the PCR court found counsel testified he wanted to retain experts in this case, but applicant had no funds with which to hire these experts. And then on 1168, there's a finding under prong one of Strickland that counsel was effective. And that is just objectively wrong. As the court pointed out a minute ago, trial counsel just failed to understand 8 v. Oklahoma, failed to understand that South Carolina has a statute and a procedure directly on point where he's able to get the experts. Mr. Gross. Yes, sir. Is that do we analyze that only subjectively? So imagine that he says, listen, the only reason I didn't do this is because I didn't think I had money. And that was his subjective belief. And let's say I agreed with you that that's ineffective because he was wrong. I thought that we looked at it objectively, though, whether the strategy employed was a reasonable one. So in other words, using cross examination instead of an expert, whether the question is, is that objectively unreasonable? Not whether this lawyer subjectively screwed up. And I think this lawyer objectively screwed up. I mean, when you look at his testimony, he said an expert would be very good question. But that's his subjective view. Don't we have to assuming we got to this question. Right. But don't we have to ask the question of whether a reasonable, objective defense lawyer could decide to not hire an expert and instead use cross examination to flesh these issues out. I mean, that's the it seems like to me, that's the question to which the state court gets deference on is the objective question. Even if we agree with you that subjectively this lawyer screwed up. The lawyer objectively screwed up because he didn't understand the law. The lawyer also testified that a expert would be very beneficial in this case. This is a case where the state relied on the one witnesses testimony, who was very uncredible that led to two hung juries and this whole host of forensic evidence, which is directly what we tried to bring in in this hearing. And so, you know, the, I think you have to look on prong one, I think you have to look at the order and the uncontested testimony, from trial counsel was this case called for an expert. We didn't get it because I didn't understand how to get it. And so I think, you know, prong one, the, the, the state Supreme court of the state courts, the district court, just got it wrong. I mean, it's contrary to, you know, well-established law, you know, prong two, you know, this is, this is not the case. The, the, the, the attorney general referenced the recent Moore opinion. And I know your honor was involved in that case. The Moore case is very distinguishable because that's a case where some mitigation was presented in a capital case. And arguably better mitigation was presented in the federal case. But the, the, the evidence was still the same claim it here. There was no expert at any level in the state court. It's not that we're trying to say that on prong two, we're not trying to say that we presented something that's different or better. We presented something new, which is what we asked to do in the state court. Can I ask a question? And if you don't know the answer to this, that that's fine. I can read it myself, but I asked your colleague, do you argue anywhere? This, this idea that this new evidence so fundamentally changes this claim that it was not an adjudication on the merits in the state court? Well, we, we, we certainly argue Martinez and we, we argue that we point out that no evidence was presented on the prejudice prong in state court. So whether you call it fundamentally altered or just entirely new evidence presented on prong two, this is a different claim than what was argued in state court on, on the prejudice prong. And, and perhaps there's a hybrid way to get to it is exhausted on prong one. It's not on prong two and this is a new claim. All right. Thank you, Mr. Ross. Excuse me, Mr. Gross. I think your time is up, right? It is. And we appreciate having your argument. I noticed you are pro bono and of course that's a great service to the court and to your client. We'll normally come down at this point in time and great council. That's the tradition in the fourth circuit. It is a wonderful practice that was begun by judge Parker down in the 1930s. And we've always followed it. But in these circumstances, any greeting has to be virtual. And so we welcome you to the court and thank you for your arguments. And we'll stand adjourned until the next case. Thank you. Thank you.
judges: Paul V. Niemeyer, Diana Gribbon Motz, Julius N. Richardson